# CHARLESTON.

THE COUNTY COURT OF CALHOUN COUNTY v. A. G. MATHEWS,
RECEIVER, *etc.*

.(C. C. 360.)

Submitted September 8, 1925.   Decided September 15, 1925.

BANKS AND BANKING—*County, on Insolvency of Bank in Which
Funds Are Deposited, Has No Right of Preference Over
General Depositors and Creditors.*

> Where county funds are deposited in a bank lawfully desig-
> nated as a depository thereof, and the bank becomes insolvent,
> the county has no prerogative right of preference in the pay-
> ment of its claim over the general depositors and creditors of
> the bank. *Woodyard* v. *Sayre*, 90 W. Va. 295, distinguished.

(Banks and Banking, 7 C. J. § 543).

(NOTE:  Parenthetical references by Editors, C. J.—Cyc.   Not
part of syllabi.)

Case certified from Circuit Court, Calhoun County.

Bill by the County Court of Calhoun County against A. G.
Mathews, as receiver of the People's Bank of Grantsville,
asserting claim to payment as a preferred creditor of the
insolvent bank. Defendant's demurrer to the bill was over-
ruled, and the court certified the case.

*Reversed.*

*Bruce Ferrell* and *Lorentz C. Hamilton,* for plaintiff.
*F. P. Moats* and *A. G. Mathews,* for defendant.
*Randolph Bias* and *Wright Hugus,* amici curiæ.

HATCHER, JUDGE:

The bill in this cause alleges that the sheriff of the County of Calhoun, on the —— day of June, 1923, filed with the plaintiff a statement naming the Peoples Bank of Grantsville as a depository of public moneys for said county; that, on the 16th day of July, 1923, and within 20 days after the filing of the statement by the sheriff, the plaintiff, at a regular term, entered an order designating the said bank as a county depository for Calhoun County funds; that, on the 16th day of July, 1923, the bank executed a bond in the penalty of $75,000.00, payable to the state, and conditioned according to law for the faithful performance on the part of the bank as such depository, which bond was approved, accepted and filed by the plaintiff; that, thereafter, the sheriff of the county deposited in the bank a large amount of the public moneys of the county, and of the several districts thereof; that, in July, 1924, the bank became insolvent, and was placed in the hands of the defendant, A. G. Mathews, as receiver, for the purpose of liquidation; that, at the time of the failure of the bank, there was due and owing by it to the plaintiff on account of the public moneys of the county and the several districts of the county, the sum of $24,239.00, which, with interest, amounted to about $25,000.00 at the institution of this suit; that, on account of the nature of the moneys and of the circumstances attending the deposit, the complainant has a preference over all the general or ordinary depositors and creditors of the bank as to said moneys; that the complainant is the only preferred creditor of the bank, and is entitled to have payment in full of its demands out of the assets of the bank before anything is paid to the bank's other creditors; that there are sufficient funds of the bank in the hands of the receiver to pay the complainant's demand in full; and that no part of the $24,-239.00, or the interest lawfully due thereon, has been paid to the complainant by the bank, or any one for it.

The bill prays that the complainant's demand may be held to constitute a preference and priority over and above all other demands against the bank, and that the receiver may be directed and required to pay complainant's demands out of the cash in his hands, etc.

The Circuit Court of Calhoun County overruled the demurrer of the receiver to the bill, and upon the joint application of the parties, certified the case here for our decision thereon.

In *Woodyard* v. *Sayre et al.*, 90 W. Va. 295, this court held that the state "had the prerogative right independently of statute, to preference and priority of payment over the general creditors for its debts, taxes, or other demands in the distribution of the estate of an insolvent debtor." Counsel for the complainant reason, by analogy, that

> "since the state has a priority in cases like this for funds due it, it seems to follow in logical sequence of thought that the county should also have a like priority for public moneys due it. * * * Nor could there be any logical reason why preference and priority would not arise in favor of the county, districts and municipalities as well as the state. It is not the state that is intended to be protected, but it is the public funds. The state could not function without these funds which are levied and raised by the counties and districts; possibly the moneys levied for school, road and other purposes by the counties and districts are more important, and of greater public benefit, than are any other public moneys."

In support of their contention, counsel cite:

> *Brown* v. *Shelton State Bank*, 139 Iowa 83;
> *Page County* v. *Rose*, 130 Iowa 296;
> *Watts, Receiver,* v. *Commissioners*, 16 L. R. A. (N. S.) 918;
> *Knighton* v. *Curry*, 62 Ala. 404;
> *Schuessler* v. *Dudley*, 80 Ala. 547.; 60 Am. Rep. 124;
> *Cummins* v. *May*, 110 Ala. 479;
> *Singleton* v. *Fidelity Co.*, 195 Ala. 506;
> *Boltz's Estate*, 19 Atl. (Pa.) 303;

*Richeson* v. *Crawford,* 94 Ill. 165;
*Fidelity* v. *Wilkinson County,* 109 Miss. 879;
*Myers* v. *Board,* 51 Kan. 87; 37 Am. St. Rep. 263;
*Bunton* v. *King,* 80 Iowa 506; 45 N. W. 1050;
*San Diego County* v. *Bank,* 52 Fed. 59;
*State* v. *Bank,* 52 Neb. 1; 66 Am. St. Rep. 484.

The above cases do give the county a preference over other creditors of an insolvent debtor. But the reason underlying each decision is (1) a special statute, or (2) a wrongful deposit of the county funds without authority of law. In cases under the second division, the debtor of the county was held to be a trustee of its funds. A fair illustration of this holding appears in the opinion in the case of *Watts* v. *Commissioners, supra:*

> "Public moneys deposited in a bank in violation of law are trust funds, do not become the property or assets of such bank, and remain trust funds, with title in the true owner after the appointment of a receiver and insolvency of the bank."

These cases have no application to the case now before us, because in this case the deposit in the bank was authorized by statute.

In oral argument, counsel cited also *Dunlap* v. *Gallatin,* 15 Ill. 7, and *Dennis* v. *Maynard,* 15 Ill. 477. Both of these cases, however, were tax cases, and held merely that a tax against property took precedence of all other demands. Counsel further contended that *Woodyard* v. *Sayre, supra,* extended the prerogative right of the state in such matters to the county and districts. The opinion in that case states that there were only two questions involved in the appeal:

> "The first is whether the state by prerogative right, if not by statute, is entitled to preference and priority over general creditors. * * * And, if so, second, whether the surety on the official bond of such sheriff, on discharging his liability to the state on such bond, is entitled to subrogation to the rights of the state."

It therefore appears that the right of a county, as such, to a preference was not before the court, and was not passed on in the *Woodyard* case.

Bacon's Abridgment, volume 8, page 91, states as a general principle of the common law of England "that where the King's right and that of a subject meet at one and the same time, the King's shall be preferred." This right was accorded to the King because he was the sovereign. The state having fallen heir to the sovereignty that was formerly the King's, heired also the right of preference incident to royalty under the common law. The sovereignty of the King was a united, entire, and indivisible sovereignty. We find no case under the common law conceding sovereignty to a political division or municipality of England. In West Virginia, the sovereignty which descended to the state from the King of England is likewise an entire and indivisible sovereignty. "The powers of government reside in all the citizens of the state." Par. 2, Art. 2, Constitution.

A county is defined in the opinion of this court in *DeVanney* v. *Hanson,* 60 W. Va. 3, to be "a mere sub-division of a state with bodies executing functions assigned to them by the sovereign in process of government, but they are not sovereign." That case also holds "a county has no citizen, in a legal sense." If a county has no citizens in a legal sense, how can it have the sovereign power that is lodged only in the citizens of the state? If it be not sovereign, how can it invoke the preference that belongs only to the sovereign? The county is a mere creature of the sovereign. Being a creature, it has only such rights as were granted it by its creator. The right of preference over other creditors of a common debtor was not one of the rights granted to the county of Calhoun by the act which created it. As was said by the court of Montana in its opinion in the case of *Bignell et al.,* v. *Cummins,* reported in 222 Pacific 797:

> "Sovereignty must involve the general interest of the state at large. It is true that the whole state has an interest in the proper administration of its laws everywhere within its borders, and so it has an interest in the proper government of every county, and so it has in every municipality and in the conduct of every school district and in the

prosperity of every citizen. But while the prerogative of the state may be invoked for the protection of the rights of the county, municipality, school district, and citizen, it does not follow that any of these possess that power. It must be held that the sovereign right, the prerogative, is lodged in the political power which is created by and is the representative of all the people—the state itself, and that the prerogative of the state may not be exercised by its creature in the absence of express authority granted to the creature.

"Granting that the county is an arm of the sovereignty, an agent of the state, an auxiliary and necessary to the proper functioning of the state government, it must be conceded that the county is only a creature of the state which may be abolished at will by the state."

Courts of other states, with constitutions similar to ours, have categorically denied a county such preference.

"The prerogative right of the sovereign to priority of payment of demands due it in its sovereign capacity was a part of the common law transmitted to Tennessee from North Carolina.

"The state is entitled to priority over other creditors of a defaulting public officer in the collection of its delinquent revenue on his bond.

"Counties are not entitled to priority over the creditors of a defaulting public officer in the collection of claims on his bond."
    *United States Fidelity & Guaranty Co.* v.
    *Rainey,* 113 S. W. (Tenn.) 397.

"Where county funds are deposited in a bank, and the bank fails, the county, in a contest over the distribution of the assets of the bank, is not entitled to a lien on these assets in preference to the individual depositors."
    *Glynn County* v. *Brunswick Terminal Co.,*
    28 S. E. (Ga.) 604.

"A county, defined by Rev. Codes 1921, par. 4293, and having under section 4441 only such powers as are expressed by law or necessarily implied from those expressed, has no sovereign power, but is a creature of and may be abolished by the state, and so has not, like the state, a 'prerogative'

right of preference over unsecured creditors of an insolvent bank; but, by reason of deposits in the bank after it has been lawfully designated a depository and given bond, the county is only a general creditor.''

> Bignell et al. v. Cummins, supra.

The argument of counsel for complainant that there is no logical reason for conferring such preference on the state and refusing it to the county and its districts may be well taken; but the decision in the *Woodyard* v. *Sayre* case is not based on policy, but on a rule of the common law. No matter how much impressed we may be by the logic of counsel for complainant, we have no right to uphold their argument unless it is founded on the law. This court can not make law; it can only declare the law. There being no law, statutory or common, authorizing such preference in favor of a county, the judgment of the lower court on the demurrer to the bill will be reversed, and the demurrer thereto sustained.

*Reversed.*